IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL K. SCHAAF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>NEW YORK STATE, DEPARTMENT OF )<br>TRANSPORTATION )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION NO.  6:18-CV-0445<br>(LEK/ATB)<br>COMPLA I NT<br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and N.Y. Executive Law, art. 15 ("Human Rights law") to correct unlawful employment practices on the basis of Plaintiff's creed and religion in violation of Title VII of the Civil Rights Act of 1964, and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity herein-below, Plaintiff alleges that Defendant, by and through its authorized agents, discriminated against Plaintiff Michael Schaaf when it subjected him to adverse consequences in employment due to his creed and religious affiliation. Defendant also subjected Plaintiff to a hostile work environment in a manner to be further described herein-below.  Finally, Defendant created a hostile work environment when it harassed and punished Plaintiff for opposing unlawful discrimination in the workplace. On behalf of Plaintiff Michael Schaaf, (also referred to hereinafter as "Mike Schaaf" or "Plaintiff"), for his complaint against Defendant New York State, Department of Transportation, (also referred to hereinafter as "Defendant" or "Employer" or "NYSDOT") states as follows:

1

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of New York, Utica Division.

3. Venue of this action in the United States District Court for the Northern District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination in the Northern District, and a substantial part of the events giving rise to these claims, occurred within the Northern District.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of employment discrimination with the New York State Division of Human Rights ("NYSDHR"), Case Number 10186986, and the United States Equal Employment Opportunity Commission ("EEOC"), Federal Charge Number 16GB701999.

5. Plaintiff files the instant Complaint within 90 days from his receipt of the "Right To Sue Letter" he received from the EEOC. (See EEOC Right to Sue Letter, attached as Exhibit "**A**").

**PARTIES**

6. Plaintiff, Michael Schaaf, is an individual and resident of Oneida County, New York, and was employed at all times relevant hereto by Defendant New York State, Department of Transportation.

7. Defendant, New York State, Department of Transportation, which employed Plaintiff during all times relevant to this Complaint, is the department of the New York State government responsible for the development and operation of highways, railroads, mass transit systems, ports, waterways and aviation facilities in the State of New York.

8. Defendant's principal office and Headquarters is located at 50 Wolf Road, Albany, New York.

9. Defendant employed Plaintiff in Oneida County, New York, where it also conducted business, within the jurisdiction of the Federal Court, Northern District, New York and where it has continuously had at least 15 employees.

10. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

11. More than thirty days prior to the institution of this lawsuit, Michael Schaaf filed a charge with the NYSDHR and EEOC alleging violations of Title VII of the Civil Rights Act of 1964 and the Human Right Law as against defendant, which resulted in a "Probable Cause Determination" from the NYSDHR (See NYSDHR 'Probable Cause" Determination, attached as Exhibit "**B**").

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. Plaintiff Michael Schaaf, and as of the present date remains – employed by NYSDOT as an Equipment Operator Instructor in Region 2, 2436 Chenango Road, Utica, New York.

14. Plaintiff converted to the Muslim faith in December of 2016.

15. As a direct and proximate result of Plaintiff's conversion to the Muslim religion, co-workers have targeted him in the workplace and have created a "textbook" hostile work environment.

16. For example, Plaintiff has, on more than one occasion, been accused by co-workers of being a "terrorist", simply because of his association with the Muslim faith.

17. Plaintiff wears a "Kufi", or a skull cap, at work from time to time to honor the strictures of his religious faith. As a result, a co-worker attempted to physically remove the Kufi from Plaintiff's head.

18. On December 15, 2016, Plaintiff was confronted by a co-worker "Chris Basile" who exclaimed to Plaintiff "nice beanie", which Plaintiff found unwelcome, derogatory and humiliating. Moreover, the reference to his Kufi as a "beanie" was commonplace on the part of several co-workers, and was meant by his co-workers to elicit anger, and upset Plaintiff.

19. Co-workers routinely criticized Plaintiff about his faith, during relevant times hereto, including asking him if he was worshipping the "right G-d".

20. At or around the same time, another colleague, Richard Dobrodziej, who is employed at NYSDOT as a Bridge Repair Supervisor, told his superior "I am not working with a fucking Muslim". This statement was repeated at least three times, prompting Plaintiff to finally leave the building in tears from what can only be described as a hostile work environment; which environment was completely accepted by Defendant NYSDOT at the time.

21. On January 4, 2017, while eating his lunch in the NYSDOT cafeteria facility in Utica, New York, Plaintiff was saying his prayers since there was no designated prayer area for him to go. While in prayer, Plaintiff was confronted by David Zamiello, also employed at

4

NYSDOT as a Traffic Systems Technician, who began ridiculing Plaintiff due to his Muslim prayers, and his religious affiliation. He then attempted to physically remove Plaintiff's Kufi, but Plaintiff, horrified that Zamiello would attempt such a degrading move, stopped him from doing so. Zamiello then grabbed Plaintiff's wrist in a hostile and physically threatening manner. Zamiello demanded that Plaintiff remove his Kufi. Plaintiff rightly refused, but was nonetheless humiliated and traumatized by this exchange.

22. On January 7, 2017, while Plaintiff was working at Fleet Administration in Utica, he was greeting some colleagues he knew, as he normally would, by extending his hand for a handshake. After shaking the hands of two colleagues, a third, Steven Congden, who is employed at NYSDOT as a "Motor Equipment Maintenance Supervisor" refused, and exclaimed to Plaintiff: "I don't shake fucking Muslim's hands because they wipe their ass with their bare hands" to which Plaintiff responded: "It's ok. You never have to shake my hand again.

23. Plaintiff was wearing his Kufi on January 7, 2017.

24. Plaintiff, as a direct result of the foregoing hostile work environment, has been forced to stop wearing his Kufi at work, and has ceased praying while at work, for fear of further violence from co-workers as well as verbal condemnation.

25. At all relevant times, supervisors and Plaintiff's superiors have not only known about the foregoing harassment, but in some instances, have participated in it.

26. Plaintiff has also been ridiculed by Marc Bonacci, who is employed at NYSDOT as a Highway Maintenance Supervisor, about changing his name to "Shamalamalouie", which is Bonacci's crude way of making fun of typical Muslim names.

27. Plaintiff found the foregoing ridiculing of Muslim names and the encouragement that he change his name to be unwelcome and humiliating.

28. The foregoing statement about changing his name to a Muslim name was witnessed by Michael Murphy, who is a NYSDOT Transportation Maintenance Engineer the Head of the "Oneida East Residency", who just observed the harassment without intervening to protect Plaintiff.

29. Indeed, after Plaintiff asked Bonacci to talk about something else and to stop harassing him, Michael Murphy laughed with Bonacci as Bonacci continued to harass and humiliate Plaintiff on the basis of his creed and religion.

30. It is noteworthy that Murphy was the head official at the place of employment, Oneida East Residency, and as a result, the highest official assigned to the workplace ratified and participated in the harassment, and certainly failed to adequately intervene despite full knowledge of the religious harassment Plaintiff was undergoing.

31. While Plaintiff is not African American, he was also offended at the routine use, in the workplace, of the "N" word in reference to black people, generally. This is something that has happened too many times to count, but has nonetheless occurred at times relevant hereto, in 2017, and has also been a source for stress, anxiety and upset in Plaintiff.

32. Upon information and belief, a separate lawsuit was filed by Plaintiff's co-worker, David Kithcart against Defendant NYSDOT in relation to the common usage of the "N" word by Bonacci and others in the NYSDOT workplace.

33. Racial and religious slurs against Plaintiff and others have been commonly used in front of supervisors, who have always failed to adequately intervene on Plaintiff's behalf.

34. Plaintiff reported the religious discrimination to the Human Resources Department which failed utterly to intervene.

35. After Plaintiff complained to HR, and HR failed to intervene, the hostile work

environment continued.

36. Gerrod Butler and Rich Rosati witnessed some of religious discrimination, including the attempt to physically remove Plaintiff's religious cap.

37. In the NYSDHR Probable Cause Determination, the contents of which are incorporated by this reference herein, the NYSDHR concluded that Plaintiff had been referred to as a "fucking Muslim" by Dobrodziej, and that he also told Plaintiff about his conversion, during relevant times hereto: "I don't care, tell anybody you want, you can tell Jesus, better yet tell Mohammed".

38. The NYSDHR also concluded, after investigation, that Defendant, by and through authorized agent Congden told Plaintiff, at relevant times: "Why are you converting to Islam? Are you joining ISIS?"

39. As the NYSDHR concluded in its Determination, Plaintiff duly complained about the religious discrimination and hostile work environment not only to Human Resources, but to his supervisor, Steve Chaisson, and to affirmative action officer Tiki Lee.

40. Notably, during the NYSDHR Investigation that led to a "Probable Cause" Determination, Defendant refused to provide the NYSDHR a copy of its internal investigation documents, citing "privilege".

41. In engaging in the foregoing hostile work environment, Defendant maliciously and scornfully discriminated against Plaintiff based upon his religion and creed in an unequivocal violation of the Title VII of the Civil Rights Act of 1964 and the Human Rights Laws.

42. The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an

employee, because of his creed and religious affiliation and to otherwise have subjected him to emotional distress and physical and mental impairments for which emotional distress damages are justified.

43.     The unlawful employment practices complained of herein-above above were intentional.

44.     At present time, Plaintiff is at risk of constructive discharge from his employment based upon the facts as alleged in this complaint, for which he is entitled to relief on the form of any lost wages or benefits he suffers as a result of any such constructive discharge.

**Counts 1 and 2: Discrimination – Creed/Religion in violation of Title VII of the Civil Rights Act of 1964 and N.Y. Exec. Law, art. 15 (Human Rights Law):**

45.     Plaintiff, a qualified employee with many years of experience on the job and stellar performance history was subjected to adverse conditions in the workplace, as elucidated herein-above, as a proximate result of his religious affiliation (Muslim) and creed for which he has suffered pecuniary and emotional harm.

46.     Said discrimination violated both Federal and State Human Rights law prohibiting discrimination in employment on the basis of religion and creed.

**Count 3: Hostile Work Environment:**

47.     Defendant created a hostile work environment for Plaintiff by failing to adequately intervene to protect Plaintiff, and in fact participating in the discriminatory acts alleged in this Complaint, and by failing to protect Plaintiff from the outrageous, repetitive, religiously offensive comments cited to herein-above, all of which were unwelcome to Plaintiff

8

and which caused Plaintiff to suffer emotional and physical trauma, and stress, to be proven at or before trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals on the basis of religion or creed or retaliating against such individuals when said individuals oppose such discrimination in the workplace.

B.     Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals regardless of religious affiliation or creed, which eradicate the effects of its past and present unlawful employment practices, including unlawful retaliation.

C.     Order Defendant Employer to make whole Michael Schaaf, by providing appropriate back-pay and lost wages, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Order Defendant Employer to make whole Michael Schaaf by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, including but not limited to: medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

E.     Order Defendant Employer to make whole Michael Schaaf by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices,

including the discrimination and retaliation complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    F.    Grant such further relief as the Court deems necessary and proper in the public interest.

<u>JURY TRIAL DEMAND</u>

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

                              Respectfully Submitted,

                              `S:/ James D. Hartt`
                              **JAMES D. HARTT, ESQ.**
                              **Attorney For Plaintiff**
                              **70 Linden Oaks, Third Floor**
                              **Rochester, NY 14625**
                              **Telephone: (585) 490-7100**
                              **Fax: (716) 299-2006**

```
ORIGINAL of the foregoing was
filed this 12th Day of April, 2018 with:
The Clerk of the Federal District Court
Northern District, New York
```